696 F.2d 613
 1982-83 Trade Cases 65,116
 In re EXTERIOR SIDING AND ALUMINUM COIL ANTITRUST LITIGATION
(M.D.L. NO. 454).
Petition of ALSIDE, INC.; Alcan Aluminum Corporation;
Aluminum Company of America; Bethlehem Steel Corporation;
Kaiser Aluminum and Chemical Corporation and Kaiser Aluminum
and Sales, Inc.; Mastic Corporation; Reynolds Metals
Company; Revere Copper & Brass, Inc.; and United States
Steel Corporation.
 No. 82-1105.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 18, 1982.
Decided Dec. 29, 1982.
 
 See also 538 F.Supp. 45.
 Eugene M. Warlich, Alan I. Silver, Elizabeth Hoene, Doherty, Rumble & Butler, St. Paul, Minn., for Alcan Aluminum Corp.
 Gordon G. Busdicker, Wendy J. Wildung, Faegre & Benson, Minneapolis, Minn., for Aluminum Co. of America.
 Leon R. Goodrich, Mark C. Peterson, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for Alside, Inc.
 Clay R. Moore, Mackall, Crounse & Moore, Minneapolis, Minn., Edwin P. Rome, Richard P. McElroy, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Bethlehem Steel Corp. and Mastic Corp.
 Abraham N. Goldman, Jeffrey Slemmons, Chicago, Ill., John A. Cochrane, Stewart C. Loper, Cochrane & Bresnahan, St. Paul, Minn., Steven Ackerman, Chicago, Ill., for Hoyt Const. Co., Inc., Minnesota Exteriors, Inc., Western Builders, Inc., Lagar Const. Co., and Midwest Builders & Materials, Inc.
 Before ROSS, ARNOLD and JOHN R. GIBSON, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Petitioners, defendants in the action below, seek a writ of mandamus, contending that the district court[1] improperly granted class certification to plaintiffs in this action.
 
 
 2
 Plaintiffs Hoyt Construction Company, Inc., and Minnesota Exteriors, Inc., originally filed an antitrust action against defendants Alside, Inc., et al., in the District of Minnesota in 1975. Plaintiffs alleged numerous antitrust violations, including conspiracies to monopolize the exterior siding and aluminum coil business. Plaintiffs attempted to have a class certified consisting of all parties who had purchased aluminum coil or exterior metal siding and related building products and accessories directly from defendants since the early 1970s. District Judge Donald Alsop,[2] to whom the case was assigned, denied class certification on August 24, 1978, in a comprehensive order in which he concluded that plaintiffs had failed to meet the requirements of Rule 23(a) and (b)(3), Fed.R. of Civ.P. Plaintiffs then attempted to have a more narrowly defined class certified, but Judge Alsop refused on two occasions to reconsider his prior denial of class certification.
 
 
 3
 Subsequently on December 9, 1980, plaintiffs Western Builders, Inc. and Lagar Construction Company filed an action similar to the Hoyt case in the Northern District of California, and on December 22, 1980, plaintiffs Midwest Builders and Materials, Inc., filed another similar action in the Northern District of Illinois.
 
 
 4
 Defendants then moved to have the three cases centralized by the Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. Sec. 1407, and requested that the consolidated action be assigned to the District of Minnesota for pretrial proceedings. Plaintiffs cross-moved for centralization of the actions, requesting that they be assigned either to the Northern District of California or to the Northern District of Illinois. The Multidistrict Litigation Panel found that the three actions involved common questions of fact, and that centralization in the District of Minnesota would best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. The Panel found that all three actions alleged similar antitrust violations and that overlapping class certifications had been sought in all three actions. The Panel assigned the California and Illinois actions to the District of Minnesota since the case there was the most advanced,[3] and designated Judge Charles R. Weiner, of the Eastern District of Pennsylvania, to sit by designation in the District of Minnesota "for coordinated or consolidated pretrial proceedings with the action already pending in that district."
 
 
 5
 After the actions were assigned to Judge Weiner, plaintiffs moved again for class certification. On August 3, 1981, Judge Weiner certified a class consisting of parties who had purchased aluminum coil or exterior aluminum siding and related building products and accessories directly from defendants since the early 1970's. Defendants subsequently moved to vacate Judge Weiner's class certification order or, in the alternative, to have the question certified for interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b). Judge Weiner refused to decertify the class, and further refused to certify for interlocutory appeal. Defendants have now petitioned for a writ of mandamus ordering Judge Weiner to vacate his class certification order.
 
 
 6
 The only individual plaintiffs before Judge Alsop were Hoyt Construction and Minnesota Exteriors, both Minnesota corporations which installed aluminum siding in the residential market. Judge Alsop denied class certification in Hoyt because he found that Hoyt and Exteriors' claims were not typical of those of other members of the proposed class, which included groups as diverse as commercial and agricultural aluminum siding installers, aluminum siding manufacturers, and homeowners. Judge Alsop also found that plaintiffs Hoyt and Exteriors would not adequately represent the proposed class because their interests were not coextensive with the interests of the class, and because the interests of some class members were antagonistic to those of Hoyt and Exteriors. Judge Alsop also found that plaintiffs did not meet the requirements of Rule 23(b)(3), concluding that common questions of law or fact did not predominate and that a class action was not a superior method of adjudicating the case since much of the evidence as to liability would relate to less than the entire proposed class and since some of the claims would require individualized proof as to liability, damages, or both.
 
 
 7
 The underlying facts did not change between the time Judge Alsop made his rulings in Hoyt and the time Judge Weiner certified a class in the consolidated cases. The California and Illinois plaintiffs made the same allegations as the Hoyt plaintiffs and sought overlapping class certification. During argument it was conceded that plaintiffs were in contact with each other before the filing of the new cases. Judge Weiner did not base his decision on changed circumstances. Rather, he stated that he simply "differed as to result" with Judge Alsop and that he was exercising his discretion to certify a class based on the facts before him.
 
 
 8
 The requirements for issuance of a writ of mandamus impose a substantial burden on the party seeking the writ. In Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193, 196 (1980), the Supreme Court stated, "It is not disputed that the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." The Court stated:
 
 
 9
 [T]he writ of mandamus "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' " [quoting Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967).] Only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy.
 
 
 10
 Id. at 35, 101 S.Ct. at 190, 66 L.Ed.2d at 196.
 
 
 11
 A writ of mandamus will issue when a district court's actions have "so exceeded its discretion as to be a usurpation of power." Sperry Rand Corporation v. Larson, 554 F.2d 868, 872 (8th Cir.1977).
 
 
 12
 Although mandamus is an extraordinary remedy to be used only in very unusual circumstances, this court has previously observed that it "remains available in those extraordinary instances when the district court, in granting the maintenance of a class action, has exceeded 'the sphere of its discretionary power.' " In Re Cessna Aircraft Distributorship Antitrust Litigation, 518 F.2d 213, 216 (8th Cir.), cert. denied 423 U.S. 947, 96 S.Ct. 363, 46 L.Ed.2d 282 (1975). We conclude that, in this instance, Judge Weiner has so exceeded his discretion.
 
 
 13
 The class action certification issue was before Judge Alsop three times, and he denied class certification on all three occasions. His original order denying class certification is well-reasoned and detailed. After his initial denial of class certification, plaintiffs in Hoyt attempted to narrow their class certification definition to eliminate some of the problems which had concerned Judge Alsop. Even after the narrowing of their definition, however, Judge Alsop still found, in a second detailed opinion, that class certification requirements had not been met. He also denied plaintiffs' subsequent motion to alter and amend his class certification denial. The class definition which plaintiffs put before Judge Weiner was essentially identical to the one they had presented to Judge Alsop the first time. Thus, it was actually broader and less well defined than the second class certification definition which Judge Alsop had rejected as inadequate.
 
 
 14
 Class certification decisions are by their nature conditional and are subject to change. Id. at 215; Rule 23(c)(1), Fed.R.Civ.P. However, Rule 23 does not contemplate that a judge should overrule a previous class certification decision without a sound basis. The Advisory Committee Notes on subsection (c)(1) state, "A determination once made can be altered or amended before the decision on the merits if, upon fuller development of the facts, the original determination appears unsound." This language contemplates that, although a Rule 23 ruling might be conditional, a judge will not alter a previous ruling unless a change in the facts of the case calls for it.
 
 
 15
 Judge Weiner did not make any new factual findings. It is true that Judge Alsop had before him only the Hoyt case, which included only two individual plaintiffs. By the time the case reached Judge Weiner, two additional complaints had been filed, but these were, as petitioners contend, virtual "carbon copies" of the Hoyt complaint, seeking overlapping class certifications. Judge Weiner based his ruling on what he perceived to be his power as a multidistrict transferee court. He stated, "It is clear from the [Multidistrict Litigation] Act itself that class certification determinations are to be resolved by the transferee court free from the influence of any initial determinations of transferor courts." January 5, 1982 Order of Judge Weiner at 5. He concluded that the orders of a court in the preconsolidation stage of a case were entitled to little or no weight after the cases were consolidated and put before a transferee court.
 
 
 16
 The powers of a transferee court are wide-ranging. See: Weigel, The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts, 78 F.R.D. 575 (1978). We do not question the power of a transferee court to overturn the decisions of a transferor court under the proper circumstances. A transferee court must be free to alter conflicting orders of transferor courts in order to effectuate the purposes of 28 U.S.C. Sec. 1407. The powers of a transferee court are not unlimited, however.
 
 
 17
 Although a judge may not be bound by the rulings of his predecessor, he also is not free to ignore them. This is the doctrine of "the law of the case", which holds that a judge ordinarily should not overrule the decisions of a prior judge in the same case without good cause. See, generally: 1B Moore's Federal Practice p 0.404. We have observed previously that the law of the case doctrine is a rule of practice rather than a command to courts. Otten v. Stonewall Insurance Co., 538 F.2d 210, 212 (8th Cir.1976). However, the doctrine " 'is something more than mere courtesy, which implies only deference to the opinion of others, since it has substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question.' " German v. Universal Oil Products Co., 77 F.2d 70, 73 (8th Cir.1935) quoting from Mast, Foos & Co. v. Stover Manufacturing Co., 177 U.S. 485, 20 S.Ct. 708, 44 L.Ed. 856 (1900).
 
 
 18
 District courts have imposed law of the case limitations on themselves in the class certification area, as in other areas. See e.g.: Sley v. Jamaica Water and Utilities, Inc., 77 F.R.D. 391 (E.D.Pa.1977) (district judge refused to decertify class certified by his predecessor in the absence of changed circumstances). This court has frequently invoked the law of the case doctrine in refusing to reconsider issues brought up on prior appeals of the same case. See, e.g.: Otten, supra; Metzger v. Hossack, 165 F.2d 1 (8th Cir.1948).
 
 
 19
 Other circuits have recognized that a judge's failure to defer to the rulings of his predecessor in the same case can amount to an abuse of discretion serious enough to warrant the granting of mandamus. See: Hayman Cash Register Co. v. Sarokin, 669 F.2d 162 (3d Cir.1982); ACF Industries, Inc. v. Guinn, 384 F.2d 15 (5th Cir.), cert. denied 390 U.S. 949, 88 S.Ct. 1039, 19 L.Ed.2d 1140 (1968).
 
 
 20
 A court's overruling of a motion by its predecessor does not constitute an abuse of discretion in all cases. In Zenith Laboratories, Inc. v. Carter-Wallace, Inc., 530 F.2d 508 (3d Cir.) cert. denied 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976), the Third Circuit upheld a district court's decertification of a class certified by a predecessor. However, the court based its holding in large part on the important changes in circumstances which had occurred between the two rulings. It is this "changed circumstances" basis which has formed the rationale for allowing a district court to overrule its predecessor in most instances. See e.g.: In Re: The Upjohn Company Antibiotic Cleocin Products Liability Litigation, 664 F.2d 114 (6th Cir.1981). In the Upjohn case, the Sixth Circuit upheld a multidistrict transferee court's power to vacate and modify protective orders entered by transferor courts, and concluded that the law of the case doctrine did not control. Even in an area as clearly within the transferee court's discretion as discovery, however, the court stated that "a transferee judge ought as a practical matter to accord considerable deference to the judgment of the transferor court." Id. at 120.
 
 
 21
 In this case the Multidistrict Litigation Panel contemplated that Judge Weiner would give consideration to Judge Alsop's prior orders. The Panel's primary reason for assigning the consolidated cases to the District of Minnesota rather than to the Districts of California or Illinois was the fact that the Minnesota case had progressed much further than the other two cases. The Panel's order observed that class certification motions had been filed in the other two cases, but that only the Hoyt class certification motion had been ruled. Although the panel did not direct Judge Weiner to defer to Judge Alsop's order regarding class certification, the Panel clearly intended Judge Weiner to make use of the substantial amount of work that had already been done by Judge Alsop.
 
 
 22
 We have before us a situation in which the Multidistrict Panel determined that several cases should be centralized in Minnesota, where the action had been pending for five years and where rulings, including class certification rulings, had been made. The district court of Minnesota was determined to be the "appropriate transferee forum." When Judge Weiner was assigned to preside over further coordinated and consolidated pretrial proceedings, he sat by designation in the transferee court. Yet Judge Weiner in his order of January 5, 1982 placed strong emphasis on the responsibility of the transferee court to make class certification determinations "free from the influence of any initial determinations of transferor courts." While he professed that the prior decisions of Judge Alsop were not ignored, he concluded that "this court, upon thorough consideration of the briefs and oral arguments now before it, differed as to the result." (Emphasis in original.)
 
 
 23
 Judge Weiner's order seemingly overlooks the fact that both Judge Alsop and he were sitting as judges of the same court--the District of Minnesota. Judge Weiner made no finding of changed circumstances, but simply disagreed with his predecessor. The three orders of Judge Alsop had dealt with increasingly limited class definitions, but Judge Weiner's order broadened the scope almost to that of the original definitions rejected by Judge Alsop.
 
 
 24
 While Judge Weiner recognized the view of this court, as explained in Sperry Rand Corp. v. Larson, 554 F.2d at 871, n. 3, that interlocutory appeal certification can play a beneficial role when "it fairly appears that an immediate appeal may materially advance the ultimate termination of the litigation," he declined to certify the cases for appeal pursuant to 28 U.S.C. Sec. 1292(b) for two reasons. First, he rejected the claim that there was substantial ground for difference of opinion because of Judge Alsop's ruling on class, because it was "within the discretion of this court alone, as transferee court," to grant certification. Further, he observed the differing policy of the Third Circuit with respect to such appeals and felt that the delay caused by the appeal would impede rather than advance the ultimate termination of the litigation.
 
 
 25
 We recognize the broad authority placed in the transferee court by section 1407, but we are here dealing with differing rulings of the same district court. The Advisory Committee notes on Rule 23, as well as the law of the case doctrine, both contemplate that rulings on class certification will not be overturned absent changed circumstances. Here we have a painstaking and detailed analysis of the class certification issues in the earlier determinations of Judge Alsop, which had been recognized by the Multidistrict Panel. To have the transferee court, though sitting with a different judge, make a differing ruling only because the second judge "differed as to the result," and considered the issue to be within his discretion alone, so exceeds the sphere of that court's discretionary power that it is a usurpation of power. Mandamus is the only possible and appropriate remedy, and this court has so applied the remedy in the past on class certification issues.
 
 
 26
 What we say does not limit the powers of a transferee court to modify or vacate the orders of the transferor court. We recognize that in multidistrict litigation a transferee court must have such broad discretionary powers. Our holding is limited simply to the situation where a district court is made a transferee court, and in a later decision reverses its position simply because the second judge differs as to the result with the predecessor judge, and without a change of circumstances.
 
 
 27
 A writ of mandamus is issued ordering (1) that the orders of the district court certifying a class entered August 3, 1981 and January 5, 1982 shall be vacated, and (2) that the district court shall refrain from recertifying a class unless and until a showing has been made of changed law or facts sufficient to justify departure from previous decisions of the district court.
 
 
 28
 ARNOLD, Circuit Judge, dissenting.
 
 
 29
 In my view, the Court today opens too wide a hole in the final-judgment rule. I therefore respectfully dissent.
 
 
 30
 In Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), a unanimous Supreme Court held that orders denying class certification are not appealable as "final decisions" within the meaning of 28 U.S.C. Sec. 1291. In so holding, the Supreme Court reversed this Court, Livesay v. Punta Gorda Isles, Inc., 550 F.2d 1106 (8th Cir.1977), which had been among the courts of appeals holding that a plaintiff could appeal the denial of class certification if, as a practical matter, the failure to certify a class would be the "death knell" of his claim. The Court invoked many of the factors traditionally used to justify the final-judgment rule, by which Congress, ever since the Judiciary Act of 1789, has set its face against piecemeal appeals. The Court pointed out that orders passing on requests for class certification are "subject to revision in the District Court." 437 U.S. at 469, 98 S.Ct. at 2458. "Thus, a district court's order denying or granting class status is inherently tentative." Id. at 469 n. 11, 98 S.Ct. at 2458 n. 11. In addition, "an order denying class certification is subject to effective review after final judgment at the behest of the named plaintiff or intervening class members." Id. at 469, 98 S.Ct. at 2458.
 
 
 31
 The same considerations apply at least as strongly to orders, like that before us in this case, granting class certification. In fact, there seems never to have been any serious contention that orders granting certification could be appealed under Sec. 1291. As the Court noted in Coopers & Lybrand, "the Courts of Appeals have correctly concluded that orders granting class certification are interlocutory." Id. at 476, 98 S.Ct. at 2462. Here, as in the case of denial of certification, an appeal after final judgment can correct any errors of the district courts. Neither the petitioning defendants nor this Court seem to dispute this point. It is true that a considerable amount of hypothetically unjustified expense and trouble will have to be borne before the time comes to appeal, but that is true of many pre-judgment rulings claimed to be incorrect. Congress has decided that the costs of allowing immediate appellate review usually exceed the benefits. In 1958 an exception was made to the general rule, in the form of Sec. 1292(b), allowing interlocutory appeals in some cases with the concurrence of both the trial and the appellate courts. Here, the District Court denied Sec. 1292(b) certification.
 
 
 32
 All of this is by way of preamble, simply to show that there is a strong policy in the Federal system against pre-judgment appellate review. Whenever a petition for mandamus or other extraordinary relief is filed, we are in fact being asked to make an exception to that policy. We may not do so merely because we think immediate appellate intervention is necessary to avoid unfairness. When it passed Sec. 1292(b), "Congress rejected the notion that the courts of appeals should be free to entertain interlocutory appeals whenever, in their discretion, it appeared necessary to avoid unfairness in the particular case." Coopers & Lybrand, supra, 437 U.S. at 474 n. 24, 98 S.Ct. at 2461 n. 24. Congress considered and rejected the proposal that the courts of appeals alone, without a prior district-court certification, be allowed to entertain interlocutory appeals.
 
 
 33
 Mandamus is formally distinct, of course, technically an original rather than an appellate proceeding. But the Supreme Court, protective of the final-judgment rule, has long hedged mandamus about with various restrictive formulae. Most recently, in Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam), the Court repeated that "[o]nly exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy." The petitioner must show that he has no other adequate means to attain the relief he desires, and that his right to issuance of the writ is clear and indisputable. Ibid. The order complained of may be wrong; it may be infected with reversible error, so that a final judgment will have to be reversed on appeal; but more must be shown to justify pre-judgment intervention by a court of appeals. These considerations must have special force with respect to decisions, like class certification, which depend heavily on facts and one's view of what they mean--decisions commonly called "discretionary," not in the sense that a judge may decide them by whim, but in the sense that different judges, both weighing the same relevant factors, may reasonably come to different conclusions. That kind of decision may be reversed on post-final-judgment appeal only for an abuse of discretion. Something more than that, therefore, must be shown to justify mandamus if the vital distinction between that extraordinary remedy and an appeal is to be preserved. This is why the Supreme Court has warned against the dangers of issuing the writ "upon a mere showing of abuse of discretion." Will v. Calvert Fire Ins. Co., 437 U.S. 655, 665 n. 7, 98 S.Ct. 2552, 2559 n. 7, 57 L.Ed.2d 504 (1978) (plurality opinion).
 
 
 34
 The "something more" that must be shown has most often been described by the label "usurpation of power." Judicial action without jurisdiction of the person or subject-matter might qualify, but "usurpation of power" seems to include more than just want of jurisdiction properly so called.[1] We expressed the test in the following language in our most recent case involving a petition for mandamus to review an order on class certification: "mandamus should not issue unless it is shown that the trial judge clearly acted beyond his power given any reasonable interpretation of Rule 23(e)." In re Alleghany Corp., 634 F.2d 1148, 1149 (8th Cir.1980). Mandamus was denied, and one judge concurred even though he "believe[d] that a serious mistake ha[d] been made by the trial court" and that the trial judge "should have recused himself." Id. at 1151 (Ross, J., concurring) (footnote omitted). The mistake, though serious, was just not egregious enough to be a "usurpation of power."
 
 
 35
 I think the same result should be reached here. Perhaps Judge Alsop's opinions denying class certification are more persuasive than Judge Weiner's opinions granting it. Certainly I should not vote to reverse Judge Alsop's decision if this were a direct appeal from it. Perhaps Judge Weiner should have given more weight to Judge Alsop's previous decisions. But he did not ignore them altogether. He simply gave them less weight than a majority of this Court would have. If Judge Alsop, on motion for reconsideration, had reversed himself and decided to certify a class after all, because he had had more time to study the law, or for any other reason commending itself to his discretion, I doubt that anyone would seriously urge that a peremptory writ issue to command Judge Alsop to adhere to his previous conclusion. I do not mean that changing one's mind is in itself a good thing, or that it could not be reversible error, but only that it is not, at least in the context of class certification, a "usurpation of power."
 
 
 36
 The Court, though conceding that the doctrine of "law of the case" may not be an inflexible command, invokes the doctrine to support its reasoning. To this I reply: "the law of what case?" Judge Alsop's decision might indeed be the law of the case brought in Minnesota by Hoyt Construction Co. and Minnesota Exteriors, Inc., but how can it be the law of the cases later brought by Western Builders, Inc., and Lagar Construction Co. in California, by Midwest Builders & Materials, Inc., in Illinois, and by Riverside Builders, the last case having been filed while this petition was pending before us? None of these later-filing plaintiffs was before Judge Alsop; none of them had a chance to argue before him that a class should be certified; yet all seem to be concluded by his ruling.
 
 
 37
 Rule 23(c)(1) provides in so many words that "[a]n order" determining whether a class should be certified "may be altered or amended before the decision on the merits." The Notes of the Advisory Committee on Rules comment as follows: "A determination once made can be altered or amended before the decision on the merits if, upon fuller development of the facts, the original determination appears unsound." The Court reads that comment to mean that "fuller development of the facts" is the only circumstance that can justify alteration or amendment of the order. The Rule itself does not say that, but even if the Rule is so limited, why are not the three later-filed cases, and their centralization for pre-trial proceedings by the Judicial Panel on Multidistrict Litigation, a sufficient change in circumstances to warrant a fresh look at class certification? A judge might well regard as more suitable for class treatment a situation in which four suits are pending in different parts of the country, than a case in which only one action, involving only one part of the country, has been brought. In his initial opinion denying class certification, Judge Alsop referred to the fact that the Minnesota plaintiffs, Hoyt and Exteriors, were "limited to ... the Minneapolis/St. Paul area." Hoyt Constr. Co. v. Alside, Inc., No. 4-75 Civ. 257, slip op. p. 9 (D.Minn. August 24, 1978). He also concluded "that the stake of Hoyt and Exteriors is insufficient to insure a vigorous prosecution of [the] claims" of the proposed class. Id. at 13. Surely the view that the filing of three new actions in far-away states by four new corporate plaintiffs justifies a new look at the class question, is not so unreasonable as to be a "usurpation of power." Cf. Zenith Labs., Inc. v. Carter-Wallace, Inc., 530 F.2d 508, 512 (3d Cir.), cert. denied, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976) (class certified by one judge; decertified by another, who assumed control of case "by normal rotation"; amendment of complaint to add four new counts is one of the changes in circumstances correctly taken into account by the second judge).
 
 
 38
 Furthermore, the Judicial Panel on Multidistrict Litigation (of which, as it happens, Judge Weiner is a member) has ruled that a transferee judge may review and revise class-action orders of the transferor courts.
 
 
 39
 In the case of class action determinations made by the transferor court prior to transfer, the provisions of Rule 23 apply permitting the transferee court to determine the class action questions and to review and revise any class action order as in its sound judicial discretion is desirable or necessary in the interests of justice.
 
 
 40
 In re Plumbing Fixture Cases, 298 F.Supp. 484, 496 (J.P.M.D.L.1968) (6-1 decision). Compare In re The Upjohn Co. Antibiotic Cleocin Prods. Liability Litigation, 664 F.2d 114 (6th Cir.1981), holding that a transferee court may amend or vacate discovery orders made by a transferor court, despite the fact that "there is something unseemly ... in permitting one judge to overrule another in a matter in which each would seem to have stood on an equal footing." Id. at 117.
 
 
 41
 Perhaps it is this apparent unseemliness, more than any other factor, that leads the Court to the conclusion it reaches today. I agree that judges should not freely ignore the rulings of their predecessors in the same case. Possibly Judge Weiner should have given more consideration to Judge Alsop's rulings, which were well reasoned and careful. I cannot conclude, however, that his failure to do so is the usurpation of power necessary to support the issuance of mandamus.
 
 
 42
 I respectfully dissent.
 
 
 
 [1]
 The Honorable Charles R. Weiner, United States District Judge for the Eastern District of Pennsylvania, sitting by designation in the District of Minnesota
 
 
 [2]
 The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota
 
 
 [3]
 The Multidistrict Panel order stated:
 Although no forum could be described as the nexus of this litigation, on balance we are persuaded that the District of Minnesota is the appropriate transferee forum because the action there is most advanced. The Minnesota action has been pending in that district for over five years. Rulings have been made on amendments to the complaint,--discovery issues, a noncommunication order, class certification motions and other matters. In contrast, the Illinois and California actions have been pending for a little more than four months.
 
 
 [1]
 A court, for example, in some sense acts without "power" whenever its decision is a clear violation of law, even though it may unquestionably have "jurisdiction" over the parties and subject-matter. In Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), mandamus was granted to annul a district court's order remanding a removed case to a state court. There was no question of the court's jurisdiction to rule on the motion to remand, and 28 U.S.C. Sec. 1447(d) provides that remand orders shall not be reviewable by appeal or otherwise. Mandamus was nevertheless granted because the district court's reason for the remand--docket congestion--was not a ground for remand under 28 U.S.C. Sec. 1447(c)