FARMERS & MERCHANTS BANK &
TRUST OF WATERTOWN, Appellee,

v.

TRAIL WEST, INC., Appellant.

FARMERS & MERCHANTS BANK &
TRUST OF WATERTOWN, Appellee,

v.

Ernest M. and Arlene M. WILLIAMS,
Appellant.

FARMERS & MERCHANTS BANK &
TRUST OF WATERTOWN, Appellee,

v.

W.H.I., INC., Appellant.

Civ. Nos. 82–1063 to 82–1065.
Bankruptcy Nos. 181–00061,
181–00062 and 181–00060.
Adv. Nos. 182–0061, 182–0062
and 182–0060.

United States District Court,
D. South Dakota, N.D.

March 15, 1983.

Steven C. Turner, Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, Omaha, Neb., Stuart L. Tiede, Woods, Fuller, Shultz & Smith, Sioux Falls, S.D., for appellee.

Joe A. Walters, Frederick P. Angst, O'Connor & Hannan, Minneapolis, Minn., and J. Bruce Blake, Sioux Falls, S.D., for appellants.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

Defendant debtors Ernest and Arlene Williams (Williams), Trail West, Inc. (Trail West) and W.H.I., Inc. (W.H.I.) appeal from the bankruptcy court's decision to grant plaintiff creditor Farmers & Merchants Bank & Trust of Watertown (Bank) relief from the Bankruptcy Code's automatic stay, 11 U.S.C. § 362. Each of the three named debtors had filed for reorganization bankruptcy under Chapter 11. Subsequently, the Bank, the debtors' common creditor, filed three separate complaints, one against each debtor. After consolidating the cases upon consent of counsel, the bankruptcy court convened a one day trial which resulted in the automatic stay being vacated as it applied to the Bank. The cases remain consolidated for the purpose of this appeal. Jurisdiction for this Court to hear the appeal is proper under 28 U.S.C. § 1334(a).[1] The decision to vacate the stay with respect to the Bank is affirmed.

## SUMMARY OF THE CASE

The facts as found by the bankruptcy judge indicate that on June 29, 1981, the three debtors filed Chapter 11 reorganization petitions in the bankruptcy court of the District of South Dakota. W.H.I. is a South Dakota corporation which owns and operates a Holiday Inn in Watertown, South Dakota. Trail West is also a South Dakota corporation, and it operates a recreational complex containing a bowling center, bars and a restaurant. Trail West leases real estate and facilities for the complex from the Williams, and the Trail West enterprise stands adjacent to W.H.I.'s Holiday Inn. The Williams are the stockholders and

---

1. Technically, 28 U.S.C. § 1334(a) has no effect until April 1, 1984. Section 405(c)(2) of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2685, 1978 *U.S.Code Cong. & Ad.News* 5787, provides that "[d]uring the transition period, the jurisdiction of the district courts ... to hear appeals shall be governed by the future 28 U.S.C. § 1334."

The interim rules governing appeals to the district court from the bankruptcy court have been preserved for the duration of the jurisdictional uncertainty caused by the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* —— U.S. —— 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) through Local Rule for Bankruptcy Cases and Proceedings for the District of South Dakota(e).

officers of the two corporations. The intimacy of the three debtors is reinforced by a number of documents executed by the Williams, W.H.I. and Trail West which provide for cross-guarantees and cross-collateralization of the debts owed to the Bank.

As of the date of the filing of the reorganization petitions, the three debtors owed the Bank a total of $4,905,687.03 in principal and accrued interest.[2] The bulk of the total was owed by W.H.I., which was indebted in the amount of $3,419,997.07. Trail West owed the Bank $808,350.50, and the Williams owed $532,791.34. The debt was secured by mortgages and real property, security interests in various personal property, accounts receivable and fixtures, and assignments of certain life insurance policies. The real estate was appraised and found to have the following values: the present market value to the Williams homestead was $125,000; the present market value of the Holiday Inn was $1,000,000; the present market value of the entertainment complex was $390,000.

From June 29, 1981, the date of the filing of the reorganization petitions through September 21, 1982, the day of the consolidated trial, no debtor had filed a plan for reorganization. During the fifteen months intervening between filing and trial, however, the debtors had been immersed in numerous activities. The Williams are shareholders in entities known as Tanglewood, Inc., Williams World, Williams, Incorporated, and Northview, Inc. None of these entities appears in the Williams statement of affairs and schedules required to be filed under Chapter 11. W.H.I. and Trail West have engaged in business dealings with these entities during the pendency of the reorganization petition. W.H.I. and Trail West have paid personal expenses for the Williams. W.H.I. and Trail West have paid pre-petition claims and paid attorneys and accountants without authorization of the bankruptcy court. Finally, despite the suspension of debt service brought on by the bankruptcy filing, W.H.I. and Trail West have continued to operate at a loss.

## JURISDICTION

As an initial matter, the Bank has argued that this Court lacks jurisdiction to hear this appeal. The Bank's argument is that a bankruptcy court's grant of relief from the automatic stay is an interlocutory decree, and a party seeking review of an interlocutory decree must receive the leave of the district court to bring the appeal. No such leave to appeal was sought in this case. Therefore, the Bank argues, this Court does not have jurisdiction over the appeal. There is no merit to the Bank's argument.

■ The Bank's argument assumes that its three debtors are appealing from an interlocutory order of the bankruptcy court. Since the § 362 automatic stay is most like an injunction, commentators have described orders affecting the stay as interlocutory orders "by definition." 1 Collier On Bankruptcy § 3.03[7][e] (15th ed. 1982). District courts have adopted this description and treated appeals from orders affecting the stay as appeals from interlocutory orders. *E.g. In re Olson,* 22 B.R. 473 (D.C.D.Neb. 1982) (dictum); *Roslyn Savings Bank v. Vaniman International, Inc.,* 8 B.R. 751 (D.C.E.D. N.Y.1981). Leave from the district court must be sought to appeal an interlocutory order of the bankruptcy court. 28 U.S.C. § 1334(b).[3] If an appellant mistakenly files a notice of appeal where an application for leave to appeal would have been proper, however, the district court can cure the procedural defect by treating the notice of appeal as the application for leave to appeal. Interim Bankruptcy Rules, rule 8004(d). *E.g. In re Doyle-Lunstra Sales Corp.,* 19 B.R. 1003 (D.C.D.S.D.1982); *In re Hadar Leasing Intern Co., Inc.,* 14 B.R. 819 (Bkrtcy.S.D.N.Y.1981). If necessary, this Court would cure the appeal through Rule

---

**2.** The total includes the sum of $144,548.12 owed the Bank by Tanglewood, Inc., a South Dakota corporation. Tanglewood is owned by the Williams, and its obligations are cross-guaranteed by the three debtors.

**3.** *See supra* note 1.

8004(d) and preserve jurisdiction over the case.

▇ This appeal has been taken, however, after a full trial on the merits of vacating the automatic stay. Both sides have presented evidence and made arguments to the bankruptcy court. The trial was convened as a final hearing as contemplated by 11 U.S.C. § 362(d) and (e)(2). It was in no sense a preliminary hearing governed by Section 362(e)(1). Any judgment following a final hearing will have a potentially significant impact on the financial health of the party who loses at the hearing. The losing debtor faces legal proceedings against himself or his property which could erase any hope of a useful bankruptcy; the losing creditor faces the prospect of standing by powerless while his debtor erodes his collateral. In either case, the rights of the parties have been determined and the parties are bound by the decision of the bankruptcy judge. Under the old bankruptcy act, orders affecting the stay were appealable to the district court. 1 Collier, *supra*, § 3.03[e][7]. Appeals from a bankruptcy court's judgment following a final hearing under 11 U.S.C. § 362(e)(2) are appeals from final judgments. They are therefore governed by 28 U.S.C. § 1334(a), and they require no leave from the district court to take an appeal. *Borg-Warner Acceptance Corp. v. Hall,* 685 F.2d 1306 (11th Cir.1982).

## PROCEDURE

Appellant debtors have attacked the procedural soundness of the means by which the bankruptcy court rendered its decision. At the end of the trial on September 21, 1982, the bankruptcy judge stated, "I'm going to find that the stay should not be lifted . . ." and proceeded to read into the record findings of fact consistent with his intended ruling. (Transcript 247–48). Attorney for the debtors then volunteered to prepare a judgment. On the following day, Septem-

ber 22, 1982, the judge wrote the parties' attorneys informing them that he had had second thoughts. His letter announced superseding findings and a new decision to terminate the stay. Prevailing counsel was invited to prepare formal findings of fact, conclusions of law and a form of judgment.

▇ Debtors argue that the bankruptcy judge's action violated Rule 52(b), Fed.R. Civ.P., which allows the emendation of judgment only upon the motion of a party.[4] To sharpen their argument debtors compare Rule 52(b) to Rule 60(a) which allows a court sua sponte to correct clerical mistakes or omissions at any time prior to the docketing of an appeal. Debtors' argument is somewhat beside the point. Both Rules 52(b) and 60(a), and their comparable bankruptcy rules, apply to judgments that have been formally entered into the record. Entry of a judgment into the record by the clerk of courts is an act which dresses the judgment of a court with the characteristics of finality. *United States v. Schaefer Brewing Co.,* 356 U.S. 227, 78 S.Ct. 674, 2 L.Ed.2d 721 (1958); *Matteson v. United States,* 240 F.2d 517 (2d Cir.1956). The Bankruptcy Rules recognize this doctrine: "A judgment is effective only when entered [by a separate document on the court's docket]." Rule 921(a), Bankruptcy Rules. Since no final judgment had been entered on September 22, 1982, the bankruptcy court was not constrained by the rules of procedure in modifying his previous statements.

▇ Debtors also contended that the bankruptcy judge's countermarch of September 22, 1982, violates the "law of the case" established by his oral statements of September 21, 1982. Debtors rely upon the recent case of *In re Exterior and Aluminum Coil Anti-Trust Litigation,* 696 F.2d 613 (8th Cir.1982) for their argument that the bankruptcy judge owed at least some duty to explain the reasons for his change. The doctrine of "law of the case" is designed to

---

**4.** Rule 52 of the Federal Rules of Civil Procedure is not applicable to bankruptcy proceedings; however, Rule 752 of the Bankruptcy Rules is substantially the same as Rule 52.

Rule 752 is applicable to proceedings under the Bankruptcy Code by virtue of Section 405(d) of the Bankruptcy Reform Act of 1978.

promote stability and efficiency in court procedures. The rule cited in *Exterior Siding,* however, states, "a judge ordinarily should not overrule the decisions of a prior judge in the same case without good cause." *Id.* at 616. In *Exterior Siding,* a district judge, sitting as a multi-district referee, overruled orders twice issued by another district judge denying class certification. An important factor in *Exterior Siding* was the presence of two different judges in the same case, because that factor carries an attendant danger of the parties re-litigating adverse rulings before a potentially more sympathetic ear. That factor is not present in this case. Moreover, the doctrine of the law of the case "is a rule of practice rather than a command of the courts." *Id.* (citing *Otten v. Stonewall Insurance Co.,* 538 F.2d 210 (8th Cir.1976)). The doctrine cannot prohibit a judge from reforming his own opinion before it is final.

■ Finally, the debtors' arguments concerning procedure lead to a sterile conclusion. Procedural law exists for the purpose of achieving justice through the substantive law. *See* 346 U.S. 946 (1954) (Separate statement of Mr. Justice Black upon adoption of revised Supreme Court Rules). The parties in this case had a full opportunity to litigate their claims on September 21. Within twenty-four hours of the close of trial, the bankruptcy judge announced that he was altering his intended decision. Debtors seem to argue that the judge could change his mind only if he put the parties to the expense and effort of re-convening everyone and hearing further argument. Such a course would be only an empty and costly gesture. Therefore, although perhaps lacking elegance and no doubt frustrating to the losing party, the procedure employed by the bankruptcy court of reversing itself before judgment had been formally entered does not constitute reversible error.

## MERITS

The debtors challenge the merits of the decision by the bankruptcy court on three grounds: (1) the court erroneously found

that mortgaged property was not necessary to debtors' Chapter 11 reorganization; (2) the court erroneously found that the Bank lacked adequate protection under 11 U.S.C. § 362(d)(1); (3) the court's findings of fact are inadequate to provide a clear understanding of the court's decision.

■ The burden of debtors' third argument appears to be again that the procedures used by the bankruptcy court in rendering its decision were inadequate. There is little doubt, however, that the facts as found by the bankruptcy court support its judgment. Debtors argue that the Bankruptcy judge erred by substantially adopting the Bank's proposed findings of fact. The record reveals that he also substantially rejected the debtors' proposed findings of fact. Debtors cite numerous authorities disapproving the practice of prevailing parties drafting the court's findings of fact. The practice "flies in the face of the spirit and purpose . . . of Rule 52(a)." *Roberts v. Ross,* 344 F.2d 747, 751 (3d Cir.1965). A district court hearing an appeal from a bankruptcy court's decision, however, must measure the findings of the lower court under the "clearly erroneous" standard. *In re Bush,* 696 F.2d 640 (8th Cir.1983); *In re Stratton,* 23 B.R. 284 (D.C.D.S.D.1982). The facts must be comprehensible and pertinent to the issues reportedly decided, *Lumbermen's Underwriting Alliance v. Can-Car, Inc.,* 645 F.2d 17 (9th Cir.1980), but if they are pertinent, the district court cannot select among possible factual findings. The factual findings of the bankruptcy court are pertinent and are not clearly erroneous.

Congress provided for relief from the automatic stay in two alternative instances. The first instance occurs when "cause" exists. Cause includes lack of adequate protection for creditors with interest in estate property. 11 U.S.C. § 362(d)(1). The second instance occurs when the debtor has no equity in the property and the property is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2). In a trial concerning relief from the automatic stay, the debtor has the burden of proof on all issues except that of the debtors' equity in the

property. 11 U.S.C. § 362(g). In this case, the bankruptcy court held against the debtors on all of the available grounds. The stay was vacated under § 362(d)(1) for cause other than lack of adequate protection and for cause in that the Bank lacked adequate protection, and under § 362(d)(2) because the debtors had no equity in property not necessary to an effective reorganization.

Although Congress singled out lack of adequate protection as sufficient cause for modification of the automatic stay, it also made clear that cause under § 362(d)(1) was not limited to lack of adequate protection. H.Rept. No. 95–595, U.S. Code Cong. & Admin.News 1978, p. 5787 to accompany H.R. 8200, 95th Cong., 1st Sess. 343 (1977). Debtor misconduct can constitute cause under § 362(d)(1). *In re Quinlan,* 12 B.R. 516 (Bkrtcy.W.D.Wisc.1981); *In re Family Investments, Inc.,* 8 B.R. 572 (Bkrtcy.W.D.Ky.1981); *In re White,* 8 B.R. 247 (Bkrtcy.C.D.Cal.1981).

The bankruptcy judge found the affairs of the three debtors were so intertwined that discussion of the activities of one debtor was meaningless without accounting for activities of the other two. Nevertheless, each of the debtors conducted itself with disregard for the bankruptcy laws. None of the debtors filed a plan for reorganization as contemplated by 11 U.S.C. § 1121. Fifteen months elapsed between the filing of the petitions and the filing by the Bank to challenge the stay. The Williams caused W.H.I. and Trail West to pay personal expenses, including expenses relating to a condominium in Arizona and expenses relating to a lake home in South Dakota. The Williams did not reveal their interests in corporate entities as required by 11 U.S.C. § 1125, and these corporations engaged in business activities with the corporate debtors. W.H.I. and Trail West paid pre-petition claims in transfers made voidable by 11 U.S.C. § 549. W.H.I. and Trail West employed the services of professionals without the Court's approval and control as defined in 11 U.S.C. §§ 327–328.

The instances of misconduct are amply supported by the record of the proceedings in the bankruptcy court. The misconduct constitutes sufficient cause for vacating the automatic stay. The Bankruptcy Code holds out a generous hand to failing debtors. The Code stays the acts of creditors while the debtor either re-floats a sinking enterprise or safely abandons ship. If a debtor seeks out the benefits of the Code's protection, a creditor has a legitimate expectation that the debtor will, at a minimum, abide by the restrictions placed upon him by the Code. By flaunting the Code, debtors here have lost their claim to hold off their creditor.

## CONCLUSION

Subsections (1) and (2) of § 362(d) are stated in the alternative. The conclusion that the automatic stay should be modified under subsection (d)(1) renders further argument moot. Therefore, debtors' argument that the Bank was adequately protected during the pendency of the reorganization effort is irrelevant since cause exists sufficient to modify the stay under § 362(d)(1). Similarly, this Court need not reach debtors' argument concerning § 362(d)(2). The meaning of the phrase "property necessary to an effective reorganization" in § 362(d)(2)(B) has precipitated an important debate. *Compare In re Boca Development Associates,* 21 B.R. 624 (Bkrtcy.E.D.N.Y.1982). (necessity for effective reorganization means more than the debtor needs the property to stay in business) *with In re Koopmans,* 22 B.R. 395 (Bkrtcy.D.Utah 1981) (necessity for effective reorganization includes furthering interests of the estate through reorganization or liquidation). Because the stay may be vacated under § 362(d)(1), however, that debate must await another case. The decision of the bankruptcy court vacating the automatic stay with respect to the Bank is affirmed under § 362(d)(1) of the Bankruptcy Code.