**Charles KAPLAN, Plaintiff,**

v.

**ITT–U.S. TRANSMISSION SYSTEMS, INC., Defendant.**

**No. 83 Civ. 4843.**

United States District Court,
E.D. New York.

July 13, 1984.

**730**

Lawrence A. Sucharow, Kass, Goodkind, Wechsler & Labaton, New York City, for plaintiff.

Grant S. Lewis, LeBoeuf, Lamb, Leiby & MacRae, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Defendant has moved to dismiss plaintiff's federal statutory cause of action under Sections 201(b) and 207 of the Communications Act of 1934, 47 U.S.C. §§ 201(b), 207, on grounds of primary jurisdiction. In addition, defendant has moved to dismiss plaintiff's common law [1] and state statutory claims on the ground that they are preempted by the Communications Act or, in the alternative, on grounds of primary jurisdiction. For the reasons given, defendant's motion is granted as to the federal and state statutory claims, but is denied as to the common law claims.

**1.** Initially, plaintiff did not specify whether these claims were grounded in federal or state common law. In response to defendant's motion to dismiss, however, plaintiff has taken the

## I. *Background*

Defendant is one of a number of communications carriers, known in the industry as "other common carriers" ("OCCs"), that seek to compete with the American Telephone and Telegraph Company ("AT & T") to provide long distance telephone service to the public. One of the shortcomings of the access arrangements that the OCCs have with the Bell System is that, unlike AT & T, they do not enjoy a feature known as "answer supervision," which is necessary for determining whether a call placed by an OCC subscriber has been completed. As a result of this shortcoming, the OCCs have adopted the practice of billing a subscriber when the unanswered call has not been terminated before a specified period of time after the call was initiated, based on the assumption that such calls were actually completed. Defendant concedes that sometimes this assumption fails, and subscribers are billed for unanswered calls.

Plaintiff is a subscriber of defendant's long distance telephone service. As explained by his memorandum in opposition to the motion to dismiss, plaintiff does not challenge defendant's practice of charging for some unanswered long-distance telephone calls or the reasonableness of the amount of those charges. Rather, plaintiff complains of defendant's allegedly "deliberate and calculated *failure to disclose the fact* of its imposition of those charges to its subscribers," or the availability of refunds for these charges. Plaintiff's Memorandum in Opposition to the Motion to Dismiss, at p. 2 (emphasis in original). Plaintiff argues that these nondisclosures are particularly misleading in light of the prior industry practice of not charging customers for unanswered calls. Furthermore, plaintiff argues that these practices cast doubt upon defendant's representation of providing long-distance calling services at less expensive rates than some of its competitors, including AT & T.

position that if state common law claims are precluded by federal statute, his claims are still viable under federal common law. *See infra* Section IIA.

Plaintiff's complaint states five causes of action: the first cause of action alleges a violation of § 201(b) of the Communications Act, which prohibits any "unjust or unreasonable" rate or practice in connection with interstate communications. Specifically, the complaint alleges that defendant billed plaintiff for unanswered calls "without providing (i) prior notice of those charges, (ii) notice of the availability of refunds for those charges, and (iii) an adequate and simplified procedure for obtaining refunds for those charges." Count 1 of plaintiff's complaint. Jurisdiction for this claim is based on 47 U.S.C. § 207, which provides as follows:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the [Federal Communications] Commission as hereinafter provided for, or may bring suit for the recovery of damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

Plaintiff's second and third causes of action allege violations of New York's Deceptive Acts and Practices Statute, General Business Law § 349 (McKinney's). Specifically, plaintiff claims that defendant misrepresented to its customers that they would save money by using defendant's services and that it failed to inform its customers of the possibility that they would be charged for unanswered calls. Plaintiff's fourth and fifth causes of action contain similar allegations, but are grounded in federal common law. *See supra* n. 1. The fourth cause of action alleges fraud and misrepresentation, while the fifth alleges breach of the agreements embodied in defendant's advertisements.

## II. *Discussion*

### A. *Defendant's Motion to Dismiss the Statutory Claims On Primary Jurisdiction Grounds*

■ The doctrine of primary jurisdiction "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pacific R. Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). Even where a federal court has jurisdiction to hear the issue brought before it,

> it may be appropriate to refer specific issues to an agency for initial determination where that procedure would secure "[u]niformity and consistency in the regulation of business entrusted to a particular agency" or where "the limited functions of review by the judiciary [would be] more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure."

*Nader v. Allegheny Airlines*, 426 U.S. 290, 303–04, 96 S.Ct. 1978, 1986–87, 48 L.Ed.2d 643 (1975) (quoting *Far East Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952)).

Defendant cites two factors that make application of the doctrine of primary jurisdiction particularly appropriate in the present case. First, the Communications Act provides plaintiff with a remedy for his grievance at the agency level. Section 208 of that Act authorizes "[a]ny person ... complaining of anything done or omitted to be done by any common carrier subject to this chapter, in contravention of the provisions thereof," to file a complaint with the FCC, and places on the FCC the duty to "investigate the matters complained of in such manner and by such means as it shall deem proper." 47 U.S.C. § 208.[2] Section

---

**2.** Plaintiff claims that the FCC has failed to exercise its powers under § 208. Instead, the FCC has allegedly referred the letter complaints about unanswered call charges to the affected OCCs for informal, individual resolution.

Plaintiff's Memorandum in Opposition, p. 18. In response, defendant points out that since its filing of the motion to dismiss, the FCC has directed it to respond to a formal administrative complaint pursuant to § 208. *See* Defendant's

209 empowers the FCC to remedy any discovered abuses and subjects the carrier to liability in damages. Second, defendant argues that because of the FCC's experience in past and ongoing administrative proceedings, and because of the complicated structural setting surrounding the practices of the OCCs, the FCC is better able than this Court to determine the reasonableness of the particular practice being challenged here.

In response, plaintiff argues that this case is controlled by the Supreme Court opinion in *Nader v. Allegheny Airlines, Inc., supra.* The Court there unanimously held that a common law tort action alleging fraudulent misrepresentation by an air carrier subject to regulation by the Civil Aeronautics Board (CAB) should not be stayed pending reference to the CAB for determination whether the practice was "deceptive" within the meaning of § 411 of the Federal Aviation Act of 1958, 49 U.S.C. § 1381. Specifically, plaintiff challenged the defendant's alleged failure to disclose its practice of overbooking flights and "bumping" passengers. In addition to holding that the common law action for misrepresentation was not preempted by the provisions of the Federal Aviation Act, see *infra* Section IIB, the Court determined that the doctrine of primary jurisdiction did not require the district court to refer the misrepresentation question to the CAB, which had already commenced its own investigation into the reasonableness of overbooking practices pursuant to § 411. 426 U.S. at 305–307, 96 S.Ct. at 1987–88.

Particularly relevant to the present action is the Court's rationale in *Nader* for distinguishing that case from other cases in which the doctrine of primary jurisdiction had been applied. In those other cases, the validity of a rate or practice included in a tariff filed with an agency had been challenged, *see, e.g., Southwestern Sugar & Molasses Co. v. River Terminals Corp.,* 360 U.S. 411, 417–18, 79 S.Ct. 1210, 1214–15, 3 L.Ed.2d 1334 (1959); *Danna v. Air France,* 463 F.2d 407 (2d Cir.1972, and the agency was uniquely equipped with the expertise and experience needed to address the underlying issues. In regard to the claim in *Nader,* however, the Court stated:

> The action brought by petitioner does not turn on a determination of the reasonableness of a challenged practice—a determination that could be facilitated by an informed evaluation of the economics or technology of the regulated industry. The standards to be applied in an action for fraudulent misrepresentation are within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of this case.
>
> \*     \*     \*     \*     \*     \*
>
> [A] court presented with a claim of misrepresentation based on failure to disclose need not make prior reference to the [administrative agency], as it should if presented with a suit challenging the reasonableness of practices detailed in a tariff. Rather, the court could, applying settled principles of tort law, determine that the tariff provided sufficient notice to the party who brought the suit ....

426 U.S. 305–06 & 306 n. 14, 96 S.Ct. at 1987–88 & 1988 n. 14.

The above-quoted language highlights the principal difference between this case and *Nader.* Although the plaintiff in this case is not challenging the reasonableness of a rate or tariff directly,[3] he is challeng-

Reply Memorandum, at p. 24. Should plaintiff remain dissatisfied with the speed of the agency's deliberations, he may seek relief under § 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706, which authorizes the federal courts to "compel agency action unlawfully withheld or unreasonably delayed."

**3.** In defendant's Reply Memorandum, plaintiff's allegations are characterized as being "in large

measure a challenge to the adequacy of the tariffs which USTS has filed with the FCC." Defendant's Reply Memorandum, p. 14. Alternatively, plaintiff's complaint may be viewed as a challenge to the rates charged by defendant, since a finding that defendant has misrepresented its product would also suggest that its rates are undeservedly high. To the extent that either of these characterizations are true, the arguments in favor of applying the doctrine of pri-

ing the reasonableness of a particular practice—defendant's nondisclosure policy—rather than an alleged breach of duty. As the Second Circuit stated in *Danna, supra,*

[s]tatutory reasonableness is an abstract quality represented by an area rather than a pinpoint .... To reduce the abstract concept of reasonableness to concrete expression in dollars and cents is the function of the [administrative agency].... [T]he prescription of the statute is a standard for the [administrative agency] to apply and, independently of [agency] action, creates no right which courts may enforce.

*Danna, supra,* 463 F.2d at 410.

In this case, adjudication of plaintiff's challenge to the reasonableness of defendant's practice under § 201 may require an inquiry into industry-wide practices and an understanding of the relative competitive positions of the various long-distance carriers. As to these matters, which are not raised in a simple common law action for fraud or misrepresentation, the judgment and expertise of the FCC is clearly desirable. Therefore, I am referring to the FCC the issue of whether defendant's nondisclosure practice is reasonable within the meaning of § 201(b) of the Communications Act.[4]

### B. *Defendant's Motion To Dismiss the Common Law Claims*

■ In *Ivy Broadcasting v. American Tel & Tel Co.,* 391 F.2d 486 (2d Cir.1968), the Second Circuit determined "that questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed solely by federal law and that the states are precluded from acting in this area." *Id.* at 491.

Based on this finding, the court held that a radio broadcasting company did not have a state law cause of action to redress the American Telephone and Telegraph Company's allegedly negligent operation of its lines and discriminatory billing practices. Nevertheless, the court found that such an action was available under federal common law, which would serve as a basis for federal court jurisdiction. *Id.* at 492–94.

Defendant cites *Ivy Broadcasting* in support of its argument that the common law and statutory claims in this action are precluded by the Communications Act. In response, the plaintiff contends that consistent with *Ivy Broadcasting, supra,* his fraud and misrepresentation actions are available under *federal* common law, if not state statutory or common law. Furthermore, plaintiff looks to the previously-discussed opinion of *Nader v. Allegheny Airlines, supra,* in which the Supreme Court upheld plaintiff's common law claim for fraudulent misrepresentation against an airline subject to regulation under the Federal Aviation Act of 1958, 49 U.S.C. §§ 1301, et seq. Just as the Supreme Court in *Nader* found the common law remedy to survive preemption based on its determination that "the common-law action and the statute are not 'absolutely inconsistent' and may coexist," 426 U.S. at 300, 96 S.Ct. at 1985, so, too, plaintiff argues in this case his common law actions are not "absolutely inconsistent" with the remedial scheme of the Communications Act and thus are not precluded by that statute. *See id.* at 299–300, 96 S.Ct. at 1984–85 (distinguishing *Texas & Pacific R.Co. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907)).

---

mary jurisdiction become even more compelling.

**4.** Plaintiff requested that, in the event that primary jurisdiction was applied to this case, the Court stay the action rather than dismiss it, and thereby permit the continuation of discovery. *See* Plaintiff's Memorandum in Opposition, pp. 23–24. Since, for the reasons indicated below, this action will be continued on the basis of

plaintiff's federal common law complaints, this request is of little consequence. Plaintiff's statutory claim will presently be deemed dismissed for referral to the FCC. Should it be determined at a subsequent time that plaintiff has been unable to achieve all the relief to which he is entitled at the administrative level, plaintiff will be granted leave to amend his complaint in this Court so as to include his statutory claim.

Although the holdings of *Nader* and *Ivy Broadcasting* tend to favor plaintiff's position, the reasoning upon which these holdings are based must be evaluated in the light of more recent pronouncements by the Supreme Court. In *Ivy Broadcasting*, the Second Circuit's application of federal common law was based on its determination that "[w]here neither the Communications Act itself nor the tariffs filed pursuant to the Act deals with a particular question, the courts are to apply a uniform rule of federal common law." 391 F.2d at 491. In *Nader*, the Supreme Court applied an even more expansive standard for the application and retention of federal common law remedies. Quoting *Texas & Pacific R.Co.*, *supra*, 204 U.S. at 437, 27 S.Ct. at 354, the Court stated that "a common-law right ... is not to be abrogated 'unless it be found that the preexisting right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words, render its provisions nugatory.'" 426 U.S. at 298, 96 S.Ct. at 1984. This standard was deemed particularly appropriate because in *Nader* and *Texas & Pacific R. Co.*, as in the present case, the relevant administrative statute contained a "savings clause" providing that "[n]othing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C. § 1506 (Federal Aviation Act). *See also* 47 U.S.C. § 414 (identical provision in Communications Act).

Since rendering its decision in *Nader*, the Supreme Court has adopted a narrower view of common law remedies in fields where Congress has legislated. For example, in *City of Milwaukee v. Illinois*, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981), the Supreme Court found the previously created federal common law action for nuisance to be precluded because of congressional amendments to the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, et seq. According to the Court in *Illinois*, "the question of whether a previously available federal common-law action

has been displaced by federal statutory law involves an assessment of the scope of the legislation and whether the scheme established by Congress addresses the problem formerly governed by federal common law." *Id.* at 315 n. 8, 101 S.Ct. at 1792 n. 8. *See also Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) (Death on the High Seas Act, 46 U.S.C. §§ 761–768, addresses question of wrongful death, thereby precluding federal common law action for damages). The development of this more restrictive approach is attributable to the Court's increasing awareness that the "commitment to the separation of powers is too fundamental" to permit the continuation of non-statutory remedies where Congress has spoken. *City of Milwaukee*, 451 U.S. at 315, 101 S.Ct. at 1791 (1981) (quoting *TVA v. Hill*, 437 U.S. 153, 195, 98 S.Ct. 2279, 2302, 57 L.Ed.2d 117 (1978)). *See also* Note, Preclusion of Section 1983 Causes of Action by Comprehensive Statutory Remedial Schemes, 82 Colum.L.Rev. 1183, 1190–96.

Accompanying this restriction of common law remedies has been a narrower interpretation of "savings clauses" similar to § 414 of the Communications Act. For example, in *City of Milwaukee, supra*, Justice Rehnquist, writing for the Court, seized on the language of the savings clause, which stated that "[n]othing *in this section*" would preclude other remedies. 33 U.S.C. § 1365(e) (emphasis added). He argued that while *this* particular section— the citizen-suit provision, 33 U.S.C. § 1365 —did not serve to preclude common law remedies, the pollution statute as a whole had that effect. 451 U.S. at 327–29, 101 S.Ct. at 1797–98. This reasoning was later cited favorably by Justice Powell, on behalf of the Court, in *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 20 n. 31, 101 S.Ct. 2615, 2626 n. 31, 69 L.Ed.2d 435 (1981) as well as by the Second Circuit in *New England Legal Found. v. Costle*, 666 F.2d 30, 33 n. 3 (2d Cir.1981).

While *City of Milwaukee* suggests that the "savings clause" should not be wooden-

ly applied to preserve all preexisting common law remedies, clearly the opinion does not dictate the result here. Section 414 of the Communications Act differs from 33 U.S.C. § 1365(e) in that § 414 states that "[n]othing *in this chapter contained*" shall preclude common law remedies (emphasis added). Since § 414 contains no remedies in itself, and since its language embraces the entire statute, Justice Rehnquist's reasoning in *City of Milwaukee* cannot be employed here. In fact, in justifying the narrow application accorded the savings clause in *City of Milwaukee,* Justice Rehnquist pointed out that "Congress knows how to say 'nothing in this Act' when it means to." 451 U.S. at 329 n. 22, 101 S.Ct. at 1798 n. 22.

In *Comtronics v. Puerto Rico Tel. Co.,* 553 F.2d 701 (1st Cir.1977), the First Circuit Court of Appeals interpreted § 414 of the Communications Act in a manner that I find to be consistent with the evolving Supreme Court principles. The plaintiff in *Comtronics,* a manufacturer of telephone terminal equipment, sued the defendants for their refusal to interconnect with their telephone lines terminal equipment sold by plaintiff to defendants' subscribers. Because the Communications Act explicitly exempted "connecting" carriers such as defendants from its coverage, the court held that plaintiff had no statutory cause of action. 553 F.2d at 704–07. Plaintiff had also asserted constitutionally based causes of action under 42 U.S.C. § 1983, but the court determined that the "precisely drawn, detailed statute pre-empts more general remedies." *Id.,* at 707 (quoting *Brown v. GSA,* 425 U.S. 820, 834, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976)). In reaching the latter result, the court found § 414 to be inapplicable based on the following reasoning:

> Because we hold that Congress withheld a damages remedy under the Act against connecting carriers ..., we think it

would make little sense to hold that a damages remedy exists against them under § 1983 for violations of the very same Act. The "existing" remedies Congress had in mind under § 414 would scarcely be remedies so closely dependent upon the Act itself; rather we read § 414 as preserving causes of action for breaches of duties distinguishable from those created under the Act, as in the case of a contract claim....

*Id.* at 707–08 n. 6 (citing *inter alia, Ivy Broadcasting, supra*).

The interpretation accorded § 414 by the court in *Comtronics* is consistent with statements made by the Supreme Court regarding the "savings clause" in the Aviation Act, 49 U.S.C. § 1506:

> That proviso was added at the end of the statute,—not to nullify other parts of the Act, or to defeat rights or remedies given by preceding sections,—but to preserve all existing rights which were not inconsistent with those created by the statute. It was also intended to preserve existing remedies, such as those by which a shipper could, in a state court, recover for damages to property while in the hands of the interstate carrier; damages caused by delay in shipment; damages caused by failure to comply with its common law duties and the like.

*Pennsylvania R. Co. v. Puritan Coal Mining Co.,* 237 U.S. 121, 129–130, 35 S.Ct. 484, 486–487, 59 L.Ed. 867 (1915) These statements were cited with approval by the court in *Nader,* 426 U.S. at 299 n. 9, 96 S.Ct. at 1984 n. 9.

The above quoted language serves to underscore the continued viability of the common law claims in this action. Although both the common law and statutory claims challenge defendant's nondisclosure practices, the breaches of duty that are alleged under the common law claims are markedly different from the statutory claims.[5] As discussed *supra* in Section

---

5. In *Nader,* the Supreme Court similarly distinguished the common law action for fraud and misrepresentation from a statutory cause of action under § 411 of the Federal Aviation Act, 49

U.S.C. § 1381. Section 411 allows the Civil Aeronautics Board, where "it considers that such action ... would be in the interest of the public," "upon its own initiative or upon com-

736

IIA, the statutory challenge to the "reasonableness" of defendant's practice may require an inquiry into industry-wide practices and constraints that would be unnecessary for purposes of the common law causes of action. For example, in a common law action for fraud or misrepresentation, the plaintiff must establish that the defendant breached a duty to disclose material information to the plaintiff and that the other common law requirements of scienter, deception, reliance and damages are satisfied. Since the common law causes of action challenge conduct that is not contemplated by the Communications Act, the reasoning of *Comtronics* indicates that § 414 should serve to preserve these claims. For this reason, defendant's motion to dismiss the federal common law actions on grounds of statutory preclusion is denied.[6]

As to defendant's alternative ground for dismissal of the common law claims—primary jurisdiction—I find, for reasons that can readily be inferred from the discussion *supra* in Section IIA, that this doctrine is not properly applicable here. Although *Nader's* findings on the issue of primary jurisdiction may be distinguishable from this case as to the statutory claims, it is clearly controlling as to the common law claims.

Therefore, defendant's motion to dismiss the common law claims on that ground is denied as well.

SO ORDERED.

plaint by any air carrier, foreign air carrier, or ticket agent," to "investigate and determine whether any air carrier ... has been or is engaged in unfair or deceptive practices or unfair methods of competition...." Practices determined to be in violation of this section "shall" be the subject of a cease-and-desist order.

The Supreme Court found that "[s]ection 411 is both broader and narrower than the remedies at common law." *Nader, supra,* 426 U.S. at 302, 96 S.Ct. at 1986. Among the Court's observations in this regard were (1) that "[n]o findings that the practice was intentionally deceptive or fraudulent or that it in fact has caused injury to an individual are necessary" for purposes of the statutory claim; *id.;* and (2) that "[a] wrong may be of the sort that calls for compensation to an injured individual without requiring the extreme remedy of a cease-and-desist order." *Id.*

Although the statutory cause of action at issue in this case is more tailored to the needs of the individual plaintiff than § 411, and thus more similar to the common law remedies, *Nader* is still applicable here for the more general proposition that statutory and common law causes of action challenging the same behavior may coexist if they require different elements of proof and allege different breaches of duty.

6. It should be noted that the same distinctions between the federal common law and statutory remedies that supported the findings of primary jurisdiction in Section IIA also serve as the basis for preserving the federal common law remedies in this section. It follows that if I am mistaken as to these distinctions, it will necessarily impact on both holdings. For example, should it be determined that causes of action identical to common law misrepresentation and breach of contract may be brought under § 201, then on the one hand, the case would become indistinguishable from *Nader* on the issue of primary jurisdiction, while on the other hand, the federal common law claims would become superfluous and would be precluded under the reasoning in *Comtronics, supra.*