In re LONG DISTANCE
TELECOMMUNICATION
LITIGATION.

CERTIFIED COLLATERAL CORPORA-
TION, et al., on behalf of themselves
and all of those similarly situated,
Plaintiffs,

v.

ALLNET COMMUNICATIONS
SERVICES, INC., et al.,
Defendants.

Charles KAPLAN, Plaintiff,

v.

ITT–UNITED STATES TRANSMISSION
SYSTEMS, INC., Defendant.

MDL No. 598.

United States District Court,
E.D. Michigan, S.D.

June 27, 1985.

James A. Mangione, Law Offices of James A. Mangione, William Lerach, Margaret Dobies, Milberg Weiss Bershad Specthrie & Lerach, San Diego, Cal., for Seymour Lazar.

Fay Clayton, Sachnoff, Weaver & Rubenstein, Ltd., Chicago, Ill., for Certified Collateral Corp. Earl E. Olive, David H. Locks.

Michael J. Freed, Chicago, Ill., for Euromarket Designs, Inc. d/b/a Crate & Barrel.

Karl L. Cambronne, Chestnut & Brooks, P.A., Minneapolis, Minn., for McIntosh Embossing, Inc.

Grant S. Lewis, LeBouef, Lamb, Leiby & MacRae, New York City, for U.S. Transmission Systems, Inc.

Mitchell S. Goldgehn, Greenberg Keele Lunn & Aronberg, Chicago, Ill., for Allnet Communication Services, Inc.

Richard J. Gray, Jenner & Block, Chicago, Ill., for MCI Telecommunications Corp.

Howard G. Kristol, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for GTE Corp., GTE Spring Communications Corp., GTE Automatic Elec. Corp., Southern Pacific Co., Southern Pacific Communication Co., Southern Pacific Satellite Co.

Gerald D. Miller, Miller, Hochman & Myerson, Jersey City, N.J., for Mark Hochman, et al.

John Havas, Foulkrod, Reynolds & Havas, Harrisburg, Pa., for Lilly M. Feitler, etc.

Nicholas Chimicles, Greenfield, Chimicles & Lewis, Haverford, Pa., for A. Linda Leventhal, etc.

Jonathan Plasse, Lawrence Sucharow, New York City, for Charles Kaplan.

Robert P. Hurlbert, Dickenson, Wright, Moon, Van Dusen & Freeman, Bloomfield Hills, Mich., for Western Union Telegraph Co.

Michael W. Ward, O'Keefe, Ashenden, Lyons & Ward, Chicago, Ill., for U.S. Telephone of the Midwest, Inc.

John Kinzey, New York City, for ITT-USTS, Inc.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

These matters come before the court on two independent motions to dismiss by the parties defendant which, because of their close relationship in questions presented, must be determined together. The first matter discussed herein is the consolidated motion of the defendants in *Certified Collateral Corporation* to dismiss the consolidated complaint of the plaintiffs. That complaint has replaced the complaints filed in ten separate class actions which had been filed in ten other U.S. District Courts and which the Judicial Panel on Multidistrict Litigation had transferred to this court in 1984.[1] The consolidated complaint essentially charges defendants, all common carriers in competition with American Telephone and Telegraph Company (AT&T) for the provision of long distance phone services to consumers thereof, with improperly charging the consumer plaintiffs for long distance calls which were never completed, and with failing to advise the plaintiffs of such a practice. Defendants are alleged to have violated both federal statutes and federal common law, and this court's jurisdiction is invoked under 28 U.S.C. § 1332 (1966) and 47 U.S.C. § 207 (1962), the jurisdictional provision of the Federal Communications Act of 1934, 47 U.S.C. § 151 *et seq* (1962), the statute which is central to this entire set of disputes. For the reasons which follow, defendants' consolidated motion to dismiss must be granted, and this case referred to the Federal Communications Commission (FCC) for disposition.

Although the *Kaplan* action was also transferred to this court by the Multidistrict Panel as a "tag-along" action, presenting claims similar to those of the plaintiffs above, *Kaplan* has not joined in the consolidated complaint, and defendant therein seeks reconsideration by this court of a previous partial denial of its motion to dismiss plaintiff Kaplan's complaint prior to its transfer to this district. Although that motion was originally denied by the United States District Court for the Eastern Dis-

---

1. *Lee v. MCI Telecommunications Corp.*, No. C-84-1471 JPV (N.D.Cal.): *Euromarket Design, Inc. v. MCI Telecommunications Corp.*, No. 84-880 (D.Mass.); *Euromarket Design, Inc. v. Allnet Communications Services, Inc.*, No. 84-881 (D.Mass.); *McIntosh Embossing, Inc. v. MCI Telecommunications Corp.*, No. 4-84-Civ-271 (D.Minn.); *Hochman v. GTE Corp., et al.*, No. 83-4555 (D.N.J.); *Certified Collateral Corp. v. MCI Telecommunications Corp.*, No. 84-C-0388 (N.D.Ill.); *Olive v. Allnet Communication Services, Inc.*, No. 84-C-1112 (N.D.Ill.): *Locks v. U.S. Telephone of the Midwest, Inc.*, No. 84-C-1465 (N.D.Ill.); *Feitler v. GTE Sprint Communications Corp.*, No. CV-84-0759 (M.D.Penn.); *Lazar v. MCI Communications, et al.*, No. 1435-B(M) (S.D.Cal.); *Leventhal v. GTE*, No. 84-CV-602.

trict of New York, *Charles Kaplan v. ITT–U.S. Transmissions Systems*, 589 F.Supp. 729 (EDNY 1984) this court will, for the reasons set down below, both entertain and grant defendant's motion, and the *Kaplan* action is also dismissed and referred to the FCC.

## I. *CERTIFIED COLLATERAL CORPORATION, et al. v. ALLNET COMMUNICATIONS SERVICES, INC., et al.*

### THE CONSOLIDATED COMPLAINT

Plaintiffs' joint complaint alleges that defendants, as providers of long distance telephone services (also referred to as common carriers), regularly charge consumers for long-distance telephone calls which are not actually completed and further, that each and every defendant's billing practices and procedures are such as to render unlikely the discovery of such charges by the consumer. Plaintiffs claim that it is the practice of defendants to routinely fail to inform their customers of these alleged charging procedures.

Count I of the complaint is brought under § 201(b) of the Communications Act, 47 U.S.C. § 201(b) (1962), and contends that defendants' above-described charges and practices are unjust and unreasonable. Count II claims that this alleged misconduct is also violative of federal common law principles of fraud. Count III cites the same conduct under § 207 of the Communications Act. Count IV claims breach of contract by defendants, and Count V asserts a conversion claim. These two counts (IV and V) are also brought under federal common law, plaintiffs contend. Finally, plaintiffs assert that defendants' conduct herein constitutes a violation of the Racketeer Influences and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.* (Supp.1984) (Count VI).

### COUNT I—§ 201(b)
### COMMUNICATIONS ACT CLAIM

Initially, this court must note that it has previously decided the first of these cases, *Control Electronics, Inc. v. Southern Pacific Communications Co.,* No. 83–1010 (E.D.Mich.1984), *appeal dismissed,* No. 84–1439 (6th Cir. October 30, 1984), which

presented facts and allegations quite similar to those contained in this consolidated complaint. After a study of the doctrine of primary jurisdiction, this court held that, under that doctrine, it must defer to the Federal Communications Commission, and dismiss the case. A review of the primary jurisdiction doctrine is in order here, but first, we should examine the statutory provision upon which plaintiffs rely. 47 U.S.C. § 201(b) (1962) provides in pertinent part:

> (b) All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful.

### PRIMARY JURISDICTION

The Supreme Court described the purpose and character of the primary jurisdiction doctrine in *U.S. v. Western Pacific RR Co.,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956):

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. Exhaustion applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. Primary jurisdiction, on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. 352 U.S. at 63–64, 77 S.Ct. at 165.

The concept of administrative primary jurisdiction had its genesis at least as early as *Texas and Pacific Railway Co. v. Abi-*

*lene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1906), in which the plaintiff brought suit against the railroad in a state court to recover allegedly unreasonable charges made by the railroad. The Interstate Commerce Act expressly provided that an aggrieved party could sue for damages either before the Interstate Commerce Commission (ICC) or in United States District Court, and expressly provided that common law remedies (such as suit in state court) were preserved. Nevertheless, the court ruled that a plaintiff must first attack the reasonableness of charges made by the railroad before the ICC. The primary reasons advanced by the court for this construction was the necessity of uniformity in determining what rates were reasonable or unreasonable under the Act.

This doctrine was further explicated and expanded in *Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952). There the United States brought its antitrust action against an association of steamship companies which had promulgated a dual system of rates favoring shippers who agreed to utilize conference members exclusively. The court held that the Federal Maritime Board had primary jurisdiction over rates charges by those companies. Although antitrust claims made by the government did not invoke the provisions under which the Maritime Board operated, the court held that the applicability of antitrust laws to the rate system being challenged must necessarily be judged, in the first instance, by the federal agency charged by Congress with the responsibility of regulating the particular industry in question. Quoting *United States Navigation Co. v. Cunard Steamship Co.*, 284 U.S. 474, 485, 52 S.Ct. 247, 250, 76 L.Ed. 408 the court said:

> Whether a given agreement among such carriers should be held to contravene the act may depend upon a consideration of economic relations, of facts peculiar to the business or its history, of competitive conditions in respect to the shipping of foreign countries, and of other relevant circumstances, generally unfamiliar to a judicial tribunal, but well understood by

an administrative body especially trained and experienced in the intricate and technical facts and usages of the shipping trade; and with which that body, consequently, is better able to deal. 342 U.S. at 573–74, 72 S.Ct. at 494.

■ The doctrine of primary jurisdiction is therefore applied to promote a number of goals which collectively recognize the primacy of regulatory statutes and agencies enacted and created by Congress. Among these goals are (1) uniformity in regulation of the business or activity involved; (2) utilization of the specialized knowledge and experience of the designated administrative body; and (3) exercise of administrative discretion in effecting regulatory policy entrusted to an agency.

As the Sixth Circuit states in *Detroit, Toledo and Ironton RR Co. and Grand Trunk Western RR Co. v. Consolidated Rail Corp.*, 727 F.2d 1391 (6th Cir.1984):

> The rule which emerges from an examination of representative decisions is that federal courts should decide issues related to purely commercial transactions between regulated carriers and should perform their judicial function of interpreting and enforcing contracts between such parties except when such judicial action results in interference with the functions which Congress has placed in the hands of the Commission (here the court was referring to the Interstate Commerce Commission). *Id.* at 1396.

■ The courts have customarily considered four factors in determining whether to defer initially to administrative review of a matter under the doctrine of primary jurisdiction. These are:

1. Whether the question at issue is within the conventional experience of judges;

2. Whether the question at issue lies peculiarly within the agency's discretion or requires the exercise of agency expertise;

3. Whether there exists a danger of inconsistent rulings disruptive of a statutory scheme; and

4. Whether a prior application to the agency has been made. *Oasis Petroleum Corp. v. U.S. Dept. of Energy,* 718 F.2d 1558, 1564 (Temp.Emer.Ct.App.1983).

■ The FCC has been responsible for the regulation of the communications industry for a considerable period of time. Defendants herein have been involved in a long struggle with AT & T over their right to access to AT & T facilities in order to provide the long-distance services which are challenged here. The FCC has been deeply involved in hearing and resolving these disputes. The very existence of defendants as competitors of AT & T in the long distance telephone market derives from the FCC decision that such competition would be beneficial to the public interest. The very reasonableness of the practices here alleged is a facet of questions of access and the FCC's prior determination of what constitutes the public interest.

In disputes between defendants, other common carriers and AT & T over the rates and access charges of AT & T, other circuits have held that these matters fell within the primary jurisdiction of the FCC. *Booth v. AT & T,* 253 F.2d 57 (7th Cir. 1958); *MCI Communications Corp. v. AT & T,* 496 F.2d 214 (3rd Cir.1974).

It would be impossible for the FCC to fulfill its function of regulating the long distance telephone market if numerous federal district courts also undertake to decide the substantial questions which directly or indirectly affect the position of the carriers within the market. *See Burlington Northern, Inc. v. United States,* 459 U.S. 131, 103 S.Ct. 514, 74 L.Ed.2d 311 (1983) (There a D.C. Court of Appeals which rejected ICC rate orders was held without power to freeze those rates prior to a decision by the Commission as to what reasonable rates should be).

The Federal Communications Act charges the FCC with the duty of prescribing just and reasonable charges, practices, classifications and regulations regarding such services, in the event those adopted by a carrier are found to be unreasonable or otherwise in violation of the Act. 47 U.S.C. § 205(a), provides:

(a) Whenever, after a full opportunity for hearing, upon a complaint or under an order for investigation and hearing made by the Commission on its own initiative, the Commission shall be of opinion that any charge, classification, regulation, or practice of any carrier or carriers is or will be in violation of any of the provisions of this chapter, the Commission is authorized and empowered to determine and prescribe what will be the just and reasonable charge or the maximum or minimum, or maximum or minimum, charge or charges to be thereafter observed, and what classification, regulation, or practice is or will be just, fair and reasonable, to be thereafter followed, and to make an order that the carrier or carriers shall cease and desist from such violation to the extent that the Commission finds that the same does or will exist, and shall thereafter publish, demand, or collect any charge other than the charge so prescribed, or in excess of the maximum or less than the minimum so prescribed, as the case may be, and shall adopt the classification and shall conform to and observe the regulation or practice so prescribed.

Thus, the FCC has authority under the Communications Act to grant to plaintiffs all of the relief requested in this action, that is damages, 47 U.S.C. § 207, and injunctive relief, 47 U.S.C. § 207. Because the FCC may also determine the reasonableness of rates under the Act, its authority regarding this matter is both superior to that of this court and broader in scope.

Regarding the second factor mentioned in *Oasis, supra,* the question of the "reasonableness" of defendant carriers' rates and practices does appear to lie well within the FCC's area of expertise and jurisdiction. Given the numerous actions which were pending before other United States District Courts prior to their transfer here, and the fact that additional suits continue to be transferred to this forum presenting the identical circumstances and conten-

tions; and the fact that the complaint essentially alleges overcharging of customers and a practice of failure to inform; and that the FCC has itself found that defendants' charging practices are "within this Commission's expertise," *Bill Correctors, Ltd. v. MCI,* —— F.C.C.2d —— (11/8/84), this court is compelled to refer these cases to the FCC for determination of whether there has been a breach of the statutory duty to impose charges and implement practices which are just and reasonable. Moreover, the FCC, unlike this court, may order such other practices as it may then determine reasonable in the industrial context, in its wisdom.

The court notes further that the FCC is conducting ongoing studies and adjudications of the relationship between the common carriers (including defendants herein) and AT & T, and the impact of that relationship upon the ability of these carriers to obtain "answer supervision," such that they would be fully aware of call completions. *MTS and WATS Market Structures,* 48 Fed.Reg. 42, 984, 43, 001 (1983), *aff'd sub. nom., National Association of Regulatory Utility Commissioners v. FCC,* 737 F.2d 1095 (D.C.Cir.1984). Those proceedings further support the decision of this court to defer decisionmaking in these cases to the FCC, which has been responsible for resolution of the numerous controversies involving the common carrier defendants and AT & T for thirteen years. *Specialized Common Carrier Services,* 29 F.C.C.2d 870 (1971), *aff'd sub. nom., Washington Utilities and Transportation Commission v. FCC,* 513 F.2d 1142 (9th Cir.), *cert. denied,* 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975).

Consideration of the third and fourth factors set forth in the *Oasis* case emphasize the necessity for referral of these problems to the FCC. There is a genuine danger of inconsistent adjudications where, as here, numerous lawsuits have been brought by individuals and class action plaintiffs in different state and federal courts across the country. Only the FCC has been involved with the material issues in these cases since their very inception, and only it should attempt to review the purported practices of defendants regarding their reasonableness, nationally. Courts have not hesitated to defer to an expert agency when such deference will promote uniformity and consistency, and this court must do so in this instance. Even the conduct of these lawsuits on a multidistrict basis cannot fulfill the intention of Congress that the Commission make the determinations here required.

Because the FCC is already reviewing the practices and procedures here complained of in *Bill Correctors, supra,* these matters are being simultaneously adjudicated by this forum and that agency, and these parallel efforts must be discontinued.

The court further notes that, since its decision in *Control Electronics,* four other federal courts have been presented with § 201(b) challenges materially indistinguishable from the challenges raised here. Consistent with this court's decision in *Control Electronics,* each of these federal courts has dismissed the Communications Act claim under the doctrine of primary jurisdiction.[2] In addition, two state courts have dismissed purported state law challenges to telecommunications carriers' charges and practices under the doctrine of primary jurisdiction.[3]

---

**2.** *Lee v. Western Union Telegraph Co.,* No. C 84–1472 TEH (N.D.Cal.1984), *appeal dismissed,* No. 84–2383 (9th Cir. January 4, 1985) (Def.Exs. 11, 12); *Schuster v. GTS Sprint Communications Corp.,* No. 83–5374 (N.D.Cal.1984), *appeal dismissed,* No. 84–2385 (9th Cir. January 9, 1985) (Def.Exs. 13, 14); *Retail Recruiters of New York, Inc. v. MCI Telecommunications Corp.,* No. 83 Civ 8048 (S.D.N.Y.1984), *appeal dismissed,* No. 84–7647 (2d Cir. October 31, 1984) (Def.Ex. 15, 16); *Kaplan v. ITT–U.S. Transmission Systems,*

*Inc.,* 589 F.Supp. 729 (E.D.N.Y.1984) (Def.Ex. 17).

**3.** *Speakers of Sport v. U.S. Telephone, Inc. et al.,* No 84 L 3247 (Cir.Ct. Cook Cty., Ill.1984), *appeal pending,* No. 85–292 (Ill.App.Ct.1985) (Def. Ex. 18, 19, 20); *Discount Den v. Allnet Communications Services, Inc.,* No. 84 CH 1059 (Cir.Ct. Cook Cty., Ill.1984) (Def.Ex. 21, 22, 23). *But, see, Kellerman, et al. v. MCI Telecommunications Corp.,* No. 82 CH 11065 (Cir.Ct. Cook Cty., Ill.1984), *aff'd and remanded,* 134 Ill.App.3d 71,

The "reasonableness" determination required under § 201(b) must be made in the first instance by the FCC, and not by this court or any other. As the expert agency regulating telecommunications carriers, the FCC is most familiar with the technical and policy issues governing defendants' provision of long distance telephone services, and it can, as we have seen, afford relief at the least equivalent to that sought by plaintiffs here. It is presently conducting related proceedings, and with full determinations on the merits of these case, it may avoid the possibility of judicial dispositions inconsistent with overall industrial concerns and federal policy.

## COUNT III—§ 207
## COMMUNICATIONS ACT CLAIM

■ 47 U.S.C. § 207 provides, in pertinent part, as follows:

Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

This provision, rather than providing substantive rights, as plaintiffs claim, merely outlines the concurrent jurisdiction of the FCC and federal district courts to hear claims of plaintiffs that defendants have violated other provisions of the act. It does not set out elements which comprise a separate and independent cause of action. As plaintiffs have not otherwise pleaded a violation of some other actionable statutory provision in this count, it must be dismissed.

## COUNT II, IV AND V—FEDERAL
## COMMON LAW CLAIMS

■ Under these counts plaintiffs urge the court to create federal common law

89 Ill.Dec. 51, 479 N.E.2d 1057 (1985) (Def.Ex. 24).

claims of fraud, breach of contract and conversion, apparently because this court has previously held that identical state law challenges are preempted by the Federal Communications Act. *Lazar v. MCI Communications Corp. et al.,* 598 F.Supp. 951 (E.D.Mich.1984).

Under *Ivy Broadcasting Co. v. American Telephone and Telegraph Co.,* 391 F.2d 486 (2d Cir.1968), plaintiffs may state a claim under federal common law only "where neither the Communications Act itself nor the tariffs filed pursuant to the Act deals with a particular question." *Ivy,* 391 F.2d at 491. In *Ivy,* the court created federal common law because it found that the Communications Act did not regulate the conduct challenged. There, the plaintiff radio broadcasting company was found not to have a state law cause of action to redress AT & T's allegedly negligent operation of its lines and discriminatory billing practices. The absence of applicable state common law established the necessity of a federal common law. The Second Circuit Court of Appeals had previously determined that "questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications services are to be governed solely by federal law and that the states are precluded from acting in this area." 391 F.2d at 491.

In the instant case, unlike *Ivy,* both this court and the FCC have recognized and expressly observed that the Communications Act regulates the challenged conduct. The plaintiffs, by their very allegations under the Act, acknowledge its applicability. In *Lazar, supra,* this court held that the conduct complained of herein is not regulated by principles of common law, but falls exclusively under the Federal Communications Act. *Lazar* moved to remand his case to California state court on the grounds that he had not claimed under a federal statute. This court held, however, that plaintiff could not defeat proper removal by artful pleading, and upon exami-

nation of the substance of the allegations in plaintiff's complaint, found that they were indeed grounded in federal communications law, in that they challenged the "reasonableness" of defendant telephone carriers' billing and disclosure procedures. Plaintiff's motion was thus denied.

Similarly, plaintiffs here may not override the preemptive scheme of federal law outlined in the Federal Communications Act of 1934 by a claim of federal common law. The act, which sets forth a comprehensive body of legislation overseeing charges, practices, duties and liabilities of interstate telecommunications carriers in connection with such carriers' provision of interstate long distance service to its customers, would surely be nullified by such a proposition.

### COUNT VI—RICO CLAIM

Although this court recognizes the current differences of opinion among the circuits regarding private causes of action brought under 18 U.S.C. §§ 1961 *et seq* (Supp.1984), and the controversial treble damages provision contained therein, it has chosen to take Congress at its word, and has not superimposed "standing" or other unwritten requirements upon the private plaintiff. *Gerald Przybylski v. Freiborne Industries, Inc.*, No. 84CV2193DT (E.D. Mich. April, 1985).

■ In the instant matter, although defendants vigorously assert the very arguments which this court has rejected in *Przybylski*, the RICO claim of the plaintiffs must fail under present circumstances for other reasons. Because the central issue here is whether the defendants' conduct complained of is "reasonable" under federal communications law, and because the FCC must first make this determination before any "injury," "crime" or "liability" on the part of defendants can be established, it would be inappropriate for this court to attempt to adjudicate plaintiffs' RICO claim before such a determination

has been made. There simply is no basis for such a claim.

### CONCLUSION

For the foregoing reasons, the defendants' consolidated motion to dismiss plaintiffs' consolidated complaint is hereby granted, and the case referred to the Federal Communications Commission.

### II. *CHARLES KAPLAN v. ITT–UNITED STATES TRANSMISSION SYSTEMS, INC.*

■ Defendant herein seeks reconsideration by this court of the partial denial of its motion to dismiss plaintiff's complaint, decided by Hon. I. Leo Glasser of the Southern District of New York. *Kaplan v. ITT–U.S. Transmission Systems, Inc.* 589 F.Supp. 729 (E.D.N.Y.1984). As the transferee forum in this multi-district case, this court clearly has the authority and obligation to entertain motions for reconsideration, as it would in any other case. *In re Upjohn Company Antibiotic Clerocin Products Liability Litigation*, 664 F.2d 114 (6th Cir.1981). For the reasons below, defendant's motion must be granted, and plaintiff's complaint dismissed on the same grounds discussed in *Certified Collateral*, above.

Plaintiff Charles Kaplan filed this action in the United States District Court for the Eastern District of New York on November 3, 1983. The first claim of the complaint alleged that defendant USTS's "practice of billing ... for unanswered calls without providing (1) prior notice of those charges [and] (ii) notice of availability for those charges ..." constituted an unjust and unreasonable charge and practice prohibited by Section 201(b) of the Communications Act, 47 U.S.C. § 201(b). Complaint, ¶ 20. The complaint went on to allege that the same conduct challenged under the Communications Act also constituted state common law fraud and breach of an alleged contract between USTS and its customers.[4]

---

**4.** The complaint also alleged violations of the New York General Business Law that were dis-

missed by Judge Glasser on preemption grounds.

The claims asserted in the complaint in the *Kaplan* case are typical of the claims alleged in the other actions against USTS's competitors that were ultimately the subject of the transfer motion before the Judicial Panel on Multidistrict Litigation (JPML). In particular, Goodkind, Wechsler & Labaton, the law firm that represented plaintiff Kaplan against USTS, also brought two suits on behalf of other plaintiffs against MCI Telecommunications Corporations and GTE Sprint Communications Corporation. *Retail Recruiters of New York v. MCI Telecommunications Corp.*, 83 Civ. 4084 (S.D.N.Y.); *Schuster v. GTE Sprint Communications Corp.*, C83-5374 (N.D.Cal.). Aside from differences in the identities of the parties and the state statutory claims asserted, the complaints in *Retail Recruiters* and *Schuster* were identical to the complaint in *Kaplan.*

Motions to dismiss, based principally on the doctrines of primary jurisdiction and preemption, were made in a number of the cases that had been filed in federal district courts across the country. In April 1984, an application was made to the JPML to transfer these pending actions to a single district for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

While the transfer motion was pending before the JPML, the district courts ruled on the various defendants' motions to dismiss. This court was the first to do so, holding on May 7, 1984, that an action against six of USTS's competitors and unidentified "Roe Corporations" should be dismissed. *Control Electronics, Inc. v. Southern Pacific Communications Company*, 83CV1010DT (E.D.Mich.1984). On June 29, 1984, Chief Judge Motley of the Southern District of New York reached the same result and dismissed the *Retail Recruiters* case, which, as indicated above, was one of the three identical actions filed by plaintiff Kaplan's counsel.

When Judge Glasser entered his decision on July 23, 1984, he reached a result that conflicted, in part, with the decisions of the other courts that had already ruled. Judge Glasser agreed that plaintiff Kaplan's principal claim, brought under Section 201 of the Communications Act, should be dismissed and referred to the FCC on primary jurisdiction grounds. However, he denied USTS's motion to dismiss the complaint's purposed common law claims even though those claims were based on the same conduct that plaintiff challenged under the Communications Act. Judge Glasser held that, although plaintiff had originally pleaded state law, his common law claims in fact arose under federal, rather than state, common law; that these "federal" common law claims created a federal cause of action separate and distinct from plaintiff's claim under the Communications Act; and that the federal common law claims which his decision created should not be sent to the FCC under the primary jurisdiction doctrine.

In August 3, 1984, Judge Henderson of the Northern District of California decided the motion to dismiss the *Schuster* case, the third of the three identical actions that had been commenced by plaintiff Kaplan's attorneys. Although Judge Henderson took note of Judge Glasser's decision, he chose to follow this court's decision in *Control Electronics* rather than Judge Glasser, and dismissed the complaint in its entirety on the grounds that the federal claims were within the FCC's primary jurisdiction and the state claims were preempted by federal law.

On August 16, 1984, Judge Glasser granted USTS's motion to certify his decision for immediate appeal to the Second Circuit, where plaintiff's appeal from Chief Judge Motley's dismissal of the *Retail Recruiters* case was already pending. In granting this motion, Judge Glasser found, *inter alia*, that his decision involved "questions of law as to which there are substantial grounds for differences of opinion...." 28 U.S.C. § 1292(b).

On August 15, 1984, the JPML entered its order transferring the remaining pending cases to this court. In that order, the Panel deferred consideration of whether the *Kaplan* case should also be transferred

until the Second Circuit had acted on USTS's application for leave to pursue its interlocutory appeal certified by Judge Glasser.

Plaintiff Kaplan originally did not oppose USTS's motion for permission to appeal in the Second Circuit. However, in mid-October 1984, plaintiff's counsel voluntarily dismissed the appeal that had been brought in the *Retail Recruiters* case, and submitted an affidavit urging the Second Circuit to deny USTS's motion in light of this development. The appellate court then denied USTS's motion in an order entered October 31, 1984. On November 19, 1984, the JPML, without any further application by any party, entered an order transferring the *Kaplan* case to this court.

While the judicial proceedings described above were in progress, the FCC had been considering formal complaints filed by Bill Correctors, Ltd. which asserted claims under the Communications Act substantially identical to those that had been asserted in the courts. *Bill Correctors, Ltd. v. United States Transmission Systems, Inc.*, FCC File NO. E–84–6. On November 8, 1984, the FCC's Common Carrier Bureau released a decision and order denying these complaints. This decision clearly indicated that the FCC is prepared to exercise its regulatory authority not only over the carriers' billing practices as such, but also over the way in which those practices are disclosed to customers. More specifically, the FCC decision states that "Bill Correctors has thus properly raised an area of concern, the method by which the carriers should notify customers of the possibility of erroneous charges for short calls and of their refund policies therefore." The order directed each defendant carrier to file a description of the notification method used or to be used to advise customers of potential billing errors and refund policies within thirty days of its entry.

Thus, there have been significant changes in circumstances since the transferor court acted in this matter, indicating the necessity to reconsider the decision made by Judge Glasser. As another Court of Appeals has stated:

> The transferee judge's authority to coordinate consolidated pretrial proceedings in multidistrict cases is the essential contribution of the multidistrict transfer procedure. That judge has the power to set aside pretrial rulings of transferor courts, and courts performing auxiliary roles must be guided by the transferee judge's rulings.

*In re Multi-Piece Rim Products Liability Litigation,* 653 F.2d 671 (D.C.Cir.1981). Although ordinarily the transferee court will not lightly disturb the ruling of a transferor court, in observance of the doctrine of the "law of the case," the Sixth Circuit expressly rejected in the *Upjohn* case, *supra,* the position that this doctrine precluded the transferee court from reconsidering a transferor court's order, holding that the "law of the case," if a proper concept in this context, would not in all events control. 664 F.2d at 120.

■ The court in *Upjohn* pointed out that the Sixth Circuit had "recognized that this doctrine [of law of the case] is not an inexorable command." *Id.* The court cited its earlier decision in *Petition of United States Steel Corp.,* 479 F.2d 489, 494 (6th Cir.), *cert. denied,* 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973), in which the court had held that the doctrine is "directed to a court's good sense so as to relieve a court of rigid adherence to its former decision. . . ." Among the well recognized exceptions to the law of the case doctrine are (a) a court may reexamine an earlier ruling in light of changes of fact or circumstances that have occurred since that decision was rendered, *see, e.g., In re Exterior Siding and Aluminum Coil Antitrust Litigation,* 696 F.2d 613, 617 (8th Cir.1982), *vacated en banc on other grounds by an equally divided court,* 705 F.2d 980 (8th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983), and (b) a court may, notwithstanding the law of the case doctrine, reverse an earlier decision if it is convinced that the decision was "clearly erroneous." *Petition of United States*

*Steel, supra,* 479 F.2d at 494. *See, generally,* 1B *Moore's Federal Practice,* ¶ 0.404 (particularly ¶ 0.404[8] ).

This matter can be resolved by reviewing the changes in circumstances which have occurred since Judge Glasser's decision.

■ Since Judge Glasser entered his decision on July 13, 1984, two very significant changes in circumstances have occurred: (1) the FCC's *Bill Correctors* decision, and (2) the JPML's transfer of the *Kaplan* case to this court.

First, when Judge Glasser entered his decision, he could not have known that the FCC would hold in *Bill Correctors* that it would regulate not only the carriers' billing practices, but the way in which those practices were disclosed to customers. The FCC's decision to take jurisdiction over all aspects of this litigation significantly undercuts the argument made by plaintiff Kaplan that his federal common law claims are not subsumed within the basic Communications Act claim that is within the primary jurisdiction of the FCC.

Further, if this court were to rule on the legality of the carriers' disclosure practices under the federal common law, despite the FCC's decision in *Bill Correctors* to regulate those practices under the Communications Act, it is now clear that there is a significant risk that the court and the FCC might reach irreconcilable results. This is precisely the type of conflict between judicial and administrative action that the preemption and primary jurisdiction doctrines were intended to avoid. *See, e.g., United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); *Far East Conference v. United States,* 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952).

Finally, the *Bill Correctors* decision reinforces the argument made by the USTS that the FCC is capable of giving plaintiff Kaplan and other customers any and all relief to which they may be entitled, and that there is no supplementary role for a court to play. In all of these ways, the intervening *Bill Correctors* decision makes USTS's arguments for dismissal more compelling, and justifies reconsideration of Judge Glasser's decision.

Second, the posture of the *Kaplan* case has now been fundamentally changed by the JPML's decision to transfer the case to this court. One of the basic purposes of the multidistrict process, and of the JPML's transfer orders in this case, is to achieve consistent rulings on the common issues among the transferred cases. The issues of primary jurisdiction and preemption which defendant herein raised on its motion before Judge Glasser are at the very heart of these controversies, and this court must be free to reexamine and reconcile any prior inconsistent rulings by transferor courts. *In re First National Bank, Heavener, Oklahoma, First Mortgage Revenue Bonds Securities Litigation,* 451 F.Supp. 995 (JPML 1978); *In re Exterior Siding and Aluminum Coil Antitrust Litigation, supra,* 696 F.2d at 616.

Judge Glasser himself recognized, in certifying his partial denial of defendant's motion to dismiss for immediate appeal, that there were substantial grounds for difference of opinion on the issues of law he decided. Because this court has ruled on the issues USTS raised in deciding the other defendants' motion to dismiss the consolidated complaint, the usual rationale for applying the "law of the case" doctrine is absent in this case. The purpose of that doctrine is to protect the courts from the burdens that would be placed on them if they were continually asked to readdress issues that had already been decided. *See* 1B *Moore's Federal Practice,* ¶ 0.404 [4.–1]. However, where, as here, the court has ruled on those very same issues in the other multidistrict cases that are before it, the invocation of the doctrine will not conserve any judicial resources, but will instead simply frustrate the goals of uniformity and fairness that the multidistrict transfers were meant to achieve.

Therefore, for the foregoing reasons, defendants' motion herein is granted, and plaintiff's federal common law claims are

hereby dismissed, and the case referred to the FCC for determination.

IT IS SO ORDERED.